IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

F I L E D
MAR -9 2020
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

CRAIG S.,[1]  )
)
    Plaintiff,  )
v.  ) Civil No. 3:19cv523–HEH
)
ANDREW M. SAUL,[2]  )
Commissioner of Social Security,  )
)
    Defendant.  )

## MEMORANDUM OPINION
(Cross-Motions for Summary Judgment)

On July 19, 2016, Craig S. ("Plaintiff") applied for Supplemental Security Income ("SSI") under the Social Security Act ("Act"), alleging disability from hepatitis C, recovering alcoholism, and hypertension, with an alleged onset date of July 1, 2015.[3] The Social Security Administration ("SSA") denied Plaintiff's claim both initially and upon reconsideration. Thereafter, Plaintiff requested a hearing, which was held on May 25, 2018, before an Administrative Law Judge ("ALJ"). At the hearing, Plaintiff amended his alleged onset date to January 25, 2017. The ALJ denied Plaintiff's claims in

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants by only their first names and last initials.

[2] On June 4, 2019, the United States Senate confirmed Andrew M. Saul to a six (6) year term as the Commissioner of Social Security. Accordingly, Commissioner Saul will be named as the defendant in this matter.

[3] There is some dispute in the Record as to whether Plaintiff filed his application for SSI on July 19, 2016, or on July 28, 2016. (R. at 13, 23, 156.) For the purposes of this Memorandum Opinion, the Court will use July 19, 2016 as the date of Plaintiff's application but will indicate the discrepancy where appropriate.

a written decision, concluding that Plaintiff did not qualify as disabled under the Act because Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. On May 24, 2019, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision as the final decision of the Commissioner subject to review by this Court.

Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g), arguing that the ALJ erred in determining Plaintiff's residual functional capacity ("RFC") as she failed to provide any substantial reason for discounting Dr. Clarke's treating opinion. (Pl.'s Mem. Supp. Mot. Summ. J. [hereinafter Pl.'s Mem.] at 7, ECF No. 14.) This matter now comes before the Court on the parties' cross-motions for summary judgment, rendering the matter ripe for review.[4] For the reasons that follow, the Court finds that the ALJ did not err in discounting the treating opinion of Dr. Clarke. Accordingly, Plaintiff's Motion for Summary Judgment will be denied (ECF No. 13), Defendant's Motion for Summary Judgment will be granted (ECF No. 15), and the final decision of the Commissioner will be affirmed.

In reviewing the Commissioner's decision to deny benefits, a court "will affirm the Social Security Administration's disability determination 'when an ALJ has applied

---

[4] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance, and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272–73 (8th Cir. 1988)).

To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). In considering the decision of the Commissioner based on the record as a whole, the court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d

3

at 477. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

The Social Security Administration regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Mascio*, 780 F.3d at 634–35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's RFC, accounting for the most that the claimant can do despite his physical and mental limitations. §§ 404.1545(a), 416.945(a). At step four, the ALJ assesses whether the claimant can perform his past work given his RFC. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can perform any work existing in the national economy. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

On May 25, 2018, the ALJ held a hearing during which Plaintiff (represented by counsel) and a vocational expert ("VE") testified. (R. at 95–97.) On October 12, 2018, the ALJ issued a written opinion, finding that Plaintiff did not qualify as disabled under the Act. (R. at 10–28.)

The ALJ followed the five-step evaluation process established by the Social Security Act in analyzing Plaintiff's disability claim. (R. at 15–23.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 19, 2016, which was Plaintiff's application date. (R. at 15.) At step two, the ALJ found that Plaintiff suffered a severe impairment—tendinopathy of the rotator cuff (right shoulder). (R. at 15.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (R. at 16.)

In assessing Plaintiff's RFC, the ALJ found that Plaintiff could perform medium work, except lifting, carrying, and pushing and pulling twenty-five (25) pounds frequently. The ALJ further found that Plaintiff could occasionally push and pull with the right upper extremity and occasionally reach overhead with the right upper extremity. (R. at 16.) At step four, the ALJ found that Plaintiff was unable to perform his past relevant work as a construction worker. (R. at 21.) However, at step five, the ALJ determined that Plaintiff could perform jobs existing in significant numbers in the national economy. (R. at 22.) Therefore, Plaintiff did not qualify as disabled under the Act. (R. at 23.)

Plaintiff's appeal to this Court alleges that the ALJ erred in discounting the treating opinion of Dr. Clarke. (Pl.'s Mem. at 7–11.) Specifically, Plaintiff argues that the ALJ "performed almost no analysis regarding Dr. Clarke's opinion" and that the ALJ's explanation was legally insufficient. (Pl.'s Mem. at 8.) Plaintiff contends that the failure to properly weigh Dr. Clarke's opinion was harmful error. (Pl.'s Mem. at 10–11.)

5

Defendant responds that the ALJ reasonably afforded Dr. Clarke's opinion limited weight and explained that the limitations contained in his opinion were not consistent with the limited objective findings contained in the treatment notes. (Def.'s Mem. Supp. Mot. Summ. J. [hereinafter Def.'s Mem.] at 2, ECF No. 15.)

During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment that would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's medical records that are provided and any medical evidence resulting from consultative examinations or medical expert evaluations that have been ordered. §§ 404.1512, 404.1527, 416.912, 416.927. When the record contains multiple medical opinions, including those from Plaintiff's treating sources, consultative examiners, or other sources that are consistent with each other, then the ALJ makes a determination based on that evidence. §§ 404.1527(c), 416.927(c). If, however, the medical opinions are inconsistent internally with each other or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. §§ 404.1527(c)(2)–(6), (d), 416.927(c)(2)–(6), (d).

Under the regulations, only an "acceptable medical source" may be considered a treating source that offers an opinion entitled to controlling weight. SSR 06-3p.[5]

---

[5] Effective March 27, 2017, the SSA rescinded SSR 96-2p and 06-3p, instead incorporating some of the Rulings' policies into 20 C.F.R. §§ 404.1527(f), 416.927(f). 82 Fed. Reg. 5844-01, at 5844-45, 5854-55 (Jan. 18, 2017). Plaintiff either filed his claims on July 19, 2016 or July 28, 2016—both of which were before this regulation took effect. (R. at 13, 23, 156.) The Agency does not have the power to engage in retroactive rulemaking. *Compare Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) (requiring Congress to expressly convey the power to

Acceptable medical sources include licensed physicians, licensed or certified psychologists and certain other specialists, depending on the claimed disability. §§ 404.1513(a), 404.1527(a), 416.913(a), 416.927(a). The regulations also provide for the consideration of opinions from "other sources," including nurse-practitioners, physician's assistants, or therapists. SSR 06-03p; §§ 404.1527(f), 416.927(f).[6]

Under the applicable regulations and case law, a treating source's opinion must be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. §§ 404.1527(c)(2), 416.927(c)(2); *Lewis v. Berryhill*, 858 F.3d 858, 867 (4th Cir. 2017); *Craig*, 76 F.3d at 590; SSR 96-2p. Further, the regulations do not require that the ALJ accept opinions from a treating source in every situation, *e.g.*, when the source opines on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Commissioner), or when the treating source's opinion is inconsistent with other evidence, or when it is not otherwise well-supported. §§ 404.1527(c)(3)–(4), (d), 416.927(c)(3)–(4), (d); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) ("[T]he ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence."); *see also Craig*, 76

---

promulgate retroactive rules due to its disfavored place in the law), *with* 42 U.S.C. § 405(a) (granting the Agency the general power to make rules, but not granting retroactive rulemaking power). Because the regulation does not have retroactive effect, SSR 06-03p applies to Plaintiff's claim.

[6] The regulations detail that "other sources" include medical sources that are not considered "acceptable medical sources" under 20 C.F.R. §§ 404.1527(f) and 416.927(f). The given examples are a non-exhaustive list. SSR 06-03p.

F.3d at 590 ("[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.").

Courts generally should not disturb an ALJ's decision as to the weight afforded a medical opinion absent some indication that the ALJ "dredged up 'specious inconsistences.'" *Dunn*, 607 F. App'x at 267 (citing *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992)). Indeed, an ALJ's decision regarding weight afforded a medical opinion should be left untouched unless the ALJ failed to give a sufficient reason for the weight afforded. *Id.* In making her explanation, an ALJ must "build an accurate and logical bridge from the evidence to [her] conclusion." *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)).

The ALJ must consider the following when evaluating a treating source's opinion: (1) the length of the treating source relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability based upon the medical record; (4) consistency between the opinion and the medical record; (5) any specialization on the part of the treating source; and (6) any other relevant factors. §§ 404.1527(c), 416.927(c). However, those same regulations specifically vest the ALJ—not the treating source—with the authority to determine whether a claimant is disabled as that term is defined under the Act. §§ 404.1527(d)(1), 416.927(d)(1). Although the regulations explicitly apply these enumerated factors only to treating sources, those same factors may be applied in evaluating opinion evidence from "other sources." SSR 06-03p.

On December 2, 2016, Plaintiff presented to his treating provider, Dr. Clarke, to establish treatment for hepatitis C. (R. at 316–20.) At that time, Dr. Clarke indicated that Plaintiff had been working as a construction worker but had to stop due to right shoulder pain and was in the process of filing for disability. (R. at 316.) Plaintiff saw Dr. Clarke again on January 25, 2017, and Dr. Clarke reported Plaintiff was suffering from chronic pain in his right shoulder, which prevented him from working. (R. at 354.) Dr. Clarke indicated he was going to refer Plaintiff to physical therapy for rehabilitation of Plaintiff's right shoulder. (R. at 358.)

Dr. Clarke completed a physical assessment of Plaintiff on February 23, 2017, in which he diagnosed Plaintiff with right rotator cuff tendinopathy and indicated that Plaintiff's symptoms were constantly "severe enough to interfere with the attention [and] concentration required to perform simple-work related tasks." (R. at 376–77.) The physical assessment was comprised mostly of short blanks and checkbox sections evaluating Plaintiff's pain and corresponding ability to engage in daily tasks. (R. at 376–77.) The assessment did not contain any final, handwritten remarks by Dr. Clarke apart from the short responses on the first page. (R. at 376–77.) Dr. Clarke indicated that Plaintiff is able to sit, stand, or walk for eight (8) hours of the workday but required two or three unscheduled breaks. (R. at 376.) In addition, Dr. Clarke indicated that Plaintiff could lift and carry ten (10) pounds for less than one-third of the workday and that Plaintiff could use his right arm for less than one-third of the workday. (R. at 376.) Dr. Clarke further indicated that Plaintiff was likely to be absent from work, as a result of his impairments or treatments, more than four (4) times a month. (R. at 377.)

The ALJ assigned Dr. Clarke's medical opinion little weight, reasoning that Dr. Clarke's opinion "is not consistent with the limited objective findings in [Plaintiff's] treatment notes." (R. at 21.) The ALJ's explanation is legally sufficient, and the ALJ did not err in discounting Dr. Clarke's treating opinion.

The law requires that the ALJ's assignment of weight be sufficiently specific "to make clear to any subsequent reviewers the weight the adjudicator gave to the . . . source's medical opinion and the reasons for that weight." SSR 96-2p (discussing affording weight to the treating physician); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (citing *Myers v. Califano*, 611 F.2d 980, 983 (4th Cir. 1980); *Strawls v. Califano*, 596 F.2d 1209, 1213 (4th Cir. 1979); *Arnold v. Sec'y of Health Educ. & Welfare*, 567 F.2d 258, 259 (4th Cir. 1977)). In this case, as mentioned, the ALJ stated that Dr. Clarke's opinion deserved limited weight because it was inconsistent with the "objective findings in [Plaintiff's] treatment notes." (R. at 21.) "While the ALJ did not cite specific pages in the record, [her] explanation relied on and identified a particular category of evidence"—the objective findings in the treatment notes. *Sharpe v. Colvin*, 660 F. App'x 251, 258 (4th Cir. 2016) (finding that the ALJ did not improperly summarily conclude that a treating physician's opinion merited little weight because the ALJ identified "a particular category of evidence").

The ALJ is also not required to regurgitate the substance of Plaintiff's treatment notes each time she considers an opinion. *See Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of

evidence in his decision."). Indeed, the ALJ discussed Plaintiff's treatment history and Plaintiff's alleged limitations in this case before deciding to assign limited weight to Dr. Clarke's opinion. (R. at 17–21.) Although brief, her summation allows for meaningful review considering it followed her narrative explanation of the evidence of record. *See Venable v. Berryhill*, Civil No. 3:18cv458, 2019 WL 2397253, at *13 (E.D. Va. June 6, 2019); *Triplett v. Saul*, Civil No. 3:19cv104, 2019 WL 6122022, at *6 (E.D. Va. Aug. 15, 2019). Therefore, the ALJ's explanation regarding the "limited objective findings in the [Plaintiff's] treatment notes" builds the logical bridge necessary for this Court to perform a meaningful review. R. at 21; *see Monroe*, 826 F.3d at 189.

Substantial evidence also supports the ALJ's assignment of limited weight to Dr. Clarke's opinion. The weight of the objective evidence reflects that Plaintiff is capable of performing a limited range of medium work. (R. at 20–21.) As mentioned by the ALJ, Plaintiff's treatment routine consisted of conservative care—primarily medications, injections, and other conservative measures, such as recommendations for physical therapy. (R. at 20, 358, 456, 459.) Plaintiff was seen by numerous physicians, who conducted physical examinations during the period at issue, and he consistently "failed to demonstrate significantly decreased strength, sensation, or reflexes." (R. at 20, 440, 441, 455, 465, 482.) In fact, Plaintiff's right shoulder strength was consistently normal, and "from a musculoskeletal perspective, his physical examinations were generally notable only for decreased range of motion in his right shoulder." (R. at 20, 440, 441, 455, 465, 482.)

11

For example, at an appointment in January 2017, Dr. Dillingham indicated that Plaintiff had normal range of motion, and his examination was otherwise unremarkable. (R. at 420.) When Plaintiff presented to Dr. Clarke in February 2017, complaining of muscle cramps in his paraspinal musculature, he was non-tender to palpation and did not have any focal motor or sensory deficits. (R. at 430.) Dr. Baldwin similarly indicated that Plaintiff had normal reflexes and muscle tone, and referred Plaintiff to physical therapy for his right shoulder at an appointment in May 2017. (R. at 435.)

Furthermore, many of Plaintiff's appointments resulted in directions to maintain hydration. Dr. Clarke admonished Plaintiff to maintain proper hydration when working outside, drink tonic water, and take magnesium in February 2017. (R. at 432.) In May 2017, Plaintiff indicated that he was not taking magnesium, and that the tonic water was not improving his symptoms. (R. at 433.) Shortly thereafter, in June 2017, Plaintiff reported that drinking water and tonic water, as well as taking magnesium, improved his symptoms. (R. at 439.) Dr. Wiggins indicated in his treatment notes during that June 2017 appointment that "these muscle cramps are very much related to dehydration. We recommended that he continue hydrating well particular[ly] in the summer and when he's sweating a lot." (R. at 441.) These treatment notes further reiterate the ALJ's observation that Plaintiff was treated with conservative care and support the ALJ's finding that that the "limited degree of treatment required and relatively benign examinations during the period at issue belie allegations of disabling symptoms or functional limitations." (R. at 20–21.)

These descriptions of Plaintiff—some provided by Dr. Clarke—contradict the restrictive limitations endorsed in Dr. Clarke's opinion. (R. at 376–77.) Indeed, Plaintiff's treatment record is consistent with the less restrictive findings that the ALJ described in her RFC, permitting Plaintiff to perform at least medium work. Substantial evidence in Plaintiff's treatment record therefore supports the ALJ's assignment of limited weight to Dr. Clarke's opinion.

In sum, the ALJ provided sufficient explanation for discounting Dr. Clarke's treating opinion. "An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." *See Dunn*, 607 F. App'x at 274. Accordingly, the Court finds that the ALJ did not err, and will affirm the ALJ's opinion.

For the reasons set forth above, Plaintiff's Motion for Summary Judgment will be denied (ECF No. 13), Defendant's Motion for Summary Judgment will be granted (ECF No. 15), and the final decision of the Commissioner will be affirmed.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States Magistrate Judge

Date: March 9, 2020
Richmond, Virginia